**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

DULAZIA BURCHETTE,         :

               Plaintiff,     :

        -against-       :

                        :

ABERCROMBIE & FITCH STORES, INC. and   :
ABERCROMBIE & FITCH COMPANY; and    :
ABERCROMBIE & FITCH TRADING       :
COMPANY; and MICHAEL S. JEFFRIES,    :
Individually and in his Official Capacity; and   :
JAMES LAUTENBACHER, Individually    :
and in his Official Capacity; and JONATHAN   :
LANDAU Individually and in his Official    :
Capacity; REGINA PARK, Individually and   :
in her Official Capacity,             :

                        :

            Defendants.    :
-----------------------------------------------------------X



08 Civ. 8786 (RMB) (THK)

**DECISION & ORDER**

## I.    Introduction

On December 15, 2008, Dulazia Burchette ("Plaintiff") filed a second amended

complaint ("Complaint") against her former employer, Abercrombie & Fitch Stores, Inc.

("A&F"), Abercrombie & Fitch Company ("A&F Company"), Abercrombie & Fitch Trading

Company ("A&F Trading"), A&F Company's Chief Executive Officer and Chairman of its

Board of Directors, Michael S. Jeffries ("Jeffries"), and Plaintiff's former supervisors, James

Lautenbacher ("Lautenbacher"), Jonathan Landau ("Landau"), and Regina Park ("Park")

(collectively, "Defendants") alleging, among other things, that "Defendants discriminated against

[P]laintiff with respect to the terms, conditions, and privileges of her employment because of her

race and color" through the "selective application and enforcement" of "a 'look' policy which

regulates and classifies hair color on the basis of employee race and color of skin." (Compl.

¶¶ 24, 80, 84; see id. ¶¶ 4–11, 14, 16–19.)  In or about June 2008, Plaintiff "left [A&F's]

premises and did not return." (Compl. ¶ 58.) Plaintiff asserts claims of race and/or color discrimination, hostile work environment, constructive discharge, and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York City Administrative Code § 8-107 ("NYCHRL"), and conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3) ("Section 1985"). (See Compl. ¶¶ 83–88, 96–102, 110–11.)[1]

On January 15, 2009, Defendants filed a motion to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that: (1) "Plaintiff has failed to plead any basis for asserting personal jurisdiction over [Jeffries]"; (2) Plaintiff's race discrimination claims are unsupported by "any facts that demonstrate [that] race had anything whatsoever to do with her alleged disparate treatment"; (3) "Plaintiff has not alleged race-based discriminatory conduct sufficient to establish a claim of hostile work environment"; (4) Plaintiff's retaliation claims fail because Plaintiff does not allege that "any adverse employment action was taken against her"; (5) "[P]laintiff cannot, as a matter of law, assert a Section 1985 conspiracy claim" because "all of the alleged conspirators work for the same entity [and] were acting within the scope of their employment"; and (6) the Court should sanction Plaintiff's counsel under 28 U.S.C. § 1927 ("Section 1927") for counsel's "continued prosecution of the Complaint in its entirety as against [Jeffries] and for her refusal to withdraw the [Section 1985] conspiracy [claim] against [Lautenbacher, Landau, and Park]." (Mem. of Law in Supp. of Mot. to Dismiss, dated Jan. 15, 2009 ("Defs. Mem."), at 12, 16, 17,

---

[1]     On January 9, 2009, Plaintiff "voluntarily withdr[ew] . . . her claims asserted under New York Executive Law § 296 (Fourth, Fifth, and Sixth Causes of Action); her claims for intentional infliction of emotional distress (Tenth Cause of Action); her claim for negligent infliction of emotional distress (Eleventh Cause of Action); [and] her contractual claim (Thirteenth Cause of Action)." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, dated Feb. 5, 2009 ("Pl. Mem."), at 1 n.1; see Ltr. from Roya Moghadassi-Weiss, Esq. to Amy Culver, Esq., dated Jan. 9, 2009, attached as Ex. C to Aff. of Amy Culver, Esq., dated Jan. 15, 2009.)

20, 21.)  Defendants also argue that "the conduct alleged in the Complaint is not the kind of conduct that, even if true, is legally sufficient to support a plausible claim of constructive discharge" and Lautenbacher, Park, and Landau cannot be personally liable for any of the claims in the Complaint because Plaintiff fails to allege that they "were personally involved in the discriminatory acts."  (Defs. Mem. at 15, 19.)

On February 5, 2009, Plaintiff filed an opposition arguing, among other things, that: (1) "[P]laintiff has established a prima facie case of personal jurisdiction" by alleging that "Jeffries has purposeful contacts with [the State of New York]"; (2) "[P]laintiff has successfully pled her claims of [race] discrimination" by "detail[ing] the manner in which [D]efendants' discriminatory 'look' policy was enforced as to her"; (3) "[P]laintiff has pled sufficient facts in support of her claim of hostile work environment" by alleging that she was subject to "racially tinted remarks," "threats of terminat[ion]," "public[] embarrass[ment]," and "close physical inspection"; (4) "[P]laintiff has pled sufficient facts in support of her retaliation claim" by alleging that she "complained of the discriminatory enforcement of the 'look' policy" and was "expelled . . . from work"; (5) "Plaintiff has successfully pled her claims of conspiracy under [Section] 1985" by "identify[ing] the individuals who acted in unison [to] deprive her of equal privileges and immunities under the law"; and (6) "[D]efendants' demand for fee shifting against [P]laintiff's counsel under [Section 1927] is at best meritless."  (Pl. Mem. at 9, 16, 17, 18, 19, 21, 22, 23, 24.)  Plaintiff's opposition papers do not appear to respond to Defendants' arguments regarding constructive discharge or personal liability.  (See Pl. Mem. at 1–25.)

On February 5, 2009, Plaintiff also filed a cross-motion requesting an Order allowing "[P]laintiff to conduct jurisdictional discovery regarding [Jeffries'] activities in and contacts with the State of New York."  (Not. of Cross-Mot., dated Feb. 5, 2009, at 1.)

On February 12, 2009, Defendants filed a reply brief in further support of their motion to dismiss the Complaint and in opposition to Plaintiff's cross-motion for jurisdictional discovery. (See Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss, dated Feb. 12, 2009 ("Reply").)

The parties waived oral argument.

**For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part and Plaintiff's cross-motion to conduct jurisdictional discovery is granted.**

II.     **Background**

For the purposes of this motion, the allegations of the Complaint are taken as true. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

On or about September 10, 2007, Plaintiff, who is African American, began working "at [A&F's] [s]tore located at 720 Fifth Avenue, New York, New York ['Store'] as a Sales Associate." (Compl. ¶ 14; see also id. ¶¶ 20, 47, 58.) Lautenbacher, Landau, and Park all worked at the Store and "functioned in a supervisory capacity toward [P]laintiff." (Compl. ¶ 17; see also id. ¶¶ 18–19.) Plaintiff alleges that "African-American employees [were] forced to have dark hair color to conform with the color of their skin as a condition for their continued employment" whereas "White/Caucasian employees' employment [was] not predicated on such [a] condition[.]" (Compl. ¶ 28.)

In February 2008, Lautenbacher ordered Plaintiff to remove the "blonde highlights in her hair" and stated, "'I can't have you working like that, either you can find a way to take the blonde highlights out, or don't come back to work[.]'" (Compl. ¶¶ 32, 33.) When Plaintiff asked "whether she could color her hair all blonde," Lautenbacher responded, "'[Y]ou can't have blonde hair, it is not natural[.]'" (Compl. ¶ 35.) "Lautenbacher [then] ordered [P]laintiff to

immediately leave the workplace and to remove the [blonde] highlights." (Compl. ¶ 39.) "Plaintiff was deeply embarrassed and humiliated [because] Lautenbacher's ridicule, orders and threats were made in front of other employees." (Compl. ¶ 36.) Plaintiff "returned home and colored her hair a dark color to cover her highlights and then returned to work the next day." (Compl. ¶ 40.) Because Plaintiff "was paid on an hourly basis," Plaintiff "lost pay for the hours she did not work when she was ordered to leave the Store[.]" (Compl. ¶¶ 41, 42.)

In June 2008, Landau told Plaintiff that "he had a problem with her hair color" because "there remained some light color highlights in [Plaintiff's] hair." (Compl. ¶¶ 44, 46.) Plaintiff "returned home and colored her hair darker to remove [her] highlights[.]" (Compl. ¶ 47.) When Plaintiff returned to the Store the next day, Lautenbacher told Plaintiff she still had "light color hair." (Compl. ¶ 49.) Lautenbacher stated that Plaintiff "should have the hair color that she was 'born with'" and could not come back to work unless she "color[ed] her hair all black." (Compl. ¶¶ 49–50.) Plaintiff complained to Park about "Lautenbacher's threat of terminating her employment unless [P]laintiff colored her hair black." (Compl. ¶ 52.) Plaintiff told Park that she thought Lautenbacher's conduct was "discriminatory" and "wanted to file a complaint" because "White/Caucasian Sales Associates were not targeted for scrutiny for their hair color, as African-American employees or other employees of color, such as [P]laintiff, were." (Compl. ¶¶ 53, 54.) "Park refused to help [P]laintiff" and stated "that she would easily replace her with another employee." (Compl. ¶¶ 55, 57.) "Plaintiff, humiliated, embarrassed and offended, left [the Store] and did not return." (Compl. ¶ 58.)

## III.   Legal Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005) (internal quotations omitted). "Where a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." Scott v. Nat'l Ass'n for Stock Car Racing, Inc., No. 06 Civ. 6029, 2008 WL 217049, at *5 (S.D.N.Y. Jan. 17, 2008) (quoting Pryor, 425 F.3d at 165). "Courts construe the pleadings and affidavits in the light most favorable to the [p]laintiff, resolving all doubts in [her] favor." Scott, 2008 WL 217049, at *5 (citing CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim, 79 F.3d at 321. "[T]he complaint must assert 'enough facts to state a claim to relief that is plausible on its face.'" Lee v. Sony BMG Music Entm't, Inc., 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008) (quoting Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007)); see also Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007). "'[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination' [and] must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)); see also Boykin v. KeyCorp, 521 F.3d 202, 212–16 (2d Cir. 2008). "[T]he pleading requirements in discrimination cases are very lenient, even de minimis." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).

## IV.    Analysis

### (1)    Personal Jurisdiction

Defendants argue, among other things, that this Court lacks personal jurisdiction over Jeffries because he "is a resident of Ohio" and Plaintiff cannot allege a prima facie case of personal jurisdiction solely "on the basis that . . . he has overall responsibility for the [l]ook policy." (Defs. Mem. at 20; Reply at 10.) Plaintiff counters, among other things, that Jeffries "is the primary architect of the look policy"; "ma[de] regular on-site visits to the Store [between 2005 and 2007] in order to supervise the enforcement of the 'look' policy"; and, during those visits, "African-American employees were removed from the sales floors and were directed to work . . . away from view [and] were replaced by Caucasian or light-color skinned employees and models [who] 'properly' represent[ed] the Store's 'look.'" (Pl. Mem. at 23; Aff. of Jamaylia L Hill, dated Dec. 30, 2008 ("Hill Aff."), ¶¶ 3, 7, 8.) Alternatively, Plaintiff seeks "jurisdictional discovery as to [Jeffries'] contacts and activities in New York" and his "supervisory authority over [the] 'look' policy." (Pl. Mem. at 2, 24.)

"New York's C.P.L.R. § 302(a)(1) confers jurisdiction over 'any non-domiciliary' who 'transacts any business within the state . . . ' so long as the cause of action arises from this conduct." Kim v. Dial Serv. Int'l, Inc., No. 96 Civ. 3327, 1997 WL 5902, at *10 (S.D.N.Y. Jan. 8, 1997) (quoting N.Y. C.P.L.R. § 302(a)(1)).[2] "A claim arises out of a party's transaction of business when there is a 'substantial nexus' between the transaction of business and the cause of action sued upon." Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637, 1999 WL 796177, at *5 (S.D.N.Y. Oct. 6, 1999); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 249 (2d Cir. 2007).

---

[2]      "To establish personal jurisdiction, this Court must apply the law of New York, the state in which it sits." Doe v. City of New York, 583 F. Supp. 2d 444, 447 (S.D.N.Y. 2008).

While none of Plaintiff's claims against Jeffries appear to arise out of his alleged contacts with New York, (see Compl. ¶¶ 25, 32–58); Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 360 (S.D.N.Y. 2007), "a court should take care to give [a] plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction," APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotations omitted). Accordingly, Plaintiff's application to conduct limited jurisdictional discovery regarding Jeffries' relationship to Plaintiff is granted.  See Hollins v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2006).  "[D]istrict courts in this Circuit have ordered jurisdictional discovery where [as here] a plaintiff made less than a prima facie showing but made a sufficient start toward establishing personal jurisdiction." Hollins, 469 F. Supp. 2d at 70 (internal quotations omitted); see also Doe, 583 F. Supp. 2d at 447–48.[3]  The parties are directed to pursue discovery regarding the issue of jurisdictional discovery with United States Magistrate Judge Theodore H. Katz.

(2)     **Race Discrimination**

Defendants argue, among other things, that "Plaintiff's claim of disparate treatment rests solely on the naked assertions that Lautenbacher, Landau, and Park were motivated by discriminatory animus" and "such allegations are insufficient to defeat this motion."  (Defs. Mem. at 11.)  Plaintiff counters, among other things, that "[P]laintiff has successfully pled her claims of [race] discrimination" because she "is an African-American"; "African-American employees such as [P]laintiff, [were] compelled to either retain the hair color they were born with or color their hair only [a] dark brown or black color to conform with the color of their skin, as a condition of their employment"; "non African-American employees working at the Store

---

[3]     Defendants may renew their jurisdictional objections regarding Jeffries after completion of jurisdictional discovery as part of any motion for summary judgment. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196–97 (2d Cir. 1990).

sport a variety of hair colors"; and the alleged racially discriminatory acts "took place at the Store." (Pl. Mem. at 9; Compl. ¶¶ 13, 14, 27.)

"To establish a claim under [Section] 1981, a plaintiff must allege facts in support of the following elements: [i] the plaintiff is a member of a racial minority; [ii] an intent to discriminate on the basis of race by the defendant; and [iii] the discrimination concerned one or more of the activities enumerated in the statute[.]" Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993); see also El Sayed v. Hilton Hotels Corp., No. 07 Civ. 11173, 2008 WL 3362828, at *6–7 (S.D.N.Y. Aug. 7, 2008).[4]

Plaintiff alleges a claim of race discrimination. See Ogindo v. DeFleur, No. 07 Civ. 1322, 2008 WL 5105153, at *3–4 (N.D.N.Y. Oct. 16, 2008); see also Boykin, 521 F.3d at 215–16. First, Plaintiff identifies herself as an African-American. See Davis v. City of New York, No. 00 Civ. 4309, 2000 WL 1877045, at *7 (S.D.N.Y. Dec. 27, 2000); (Compl. ¶ 13.) Second, Plaintiff "identif[ies] a . . . policy that [allegedly] has been applied in an intentionally discriminatory manner" against her. Wiley v. Citibank, N.A., No. 98 Civ. 1139, 2001 WL 357322, at *3 (S.D.N.Y. Mar. 31, 2001) (internal quotations omitted); see Brown v. City of Oneonta, 221 F.3d 329, 337–39 (2d Cir. 2000); Rogers v. Am. Airlines, Inc., 527 F. Supp. 229, 233 (S.D.N.Y. 1981) ("Plaintiff [] asserts in her complaint that the regulation has been applied in an uneven and discriminatory manner. She claims that white women in particular have been permitted to wear pony tails and shag cuts. . . . [T]he complaint could be construed as alleging that the policy has been applied in a discriminatory manner against plaintiff because she is

---

[4]     The court will consider Plaintiff's Section 1981 and NYCHRL claims together because "[e]mployment discrimination claims under [Section] 1981 and the NYCHRL are analyzed using the same legal framework." Milligan v. Citibank, N.A., No. 00 Civ. 2793, 2001 WL 1135943, at *2 (S.D.N.Y. Sept. 26, 2001); see Ifill v. United Parcel Serv., No. 04 Civ. 5963, 2005 WL 736151, at *5 n.3 (S.D.N.Y. Mar. 29, 2005); (see also Defs. Mem. at 8 n.6; Reply at 4.)

black[.]  On its face, this allegation is sufficient[.]"); (Compl. ¶¶ 23–29.)  Third, the alleged

discrimination occurred in the context of Plaintiff's employment, and "Section 1981 prohibits

discrimination with respect to the conditions of a contractual relationship, which includes at-will

employment." Carmody v. City of New York, No. 05 Civ. 8084, 2006 WL 3317026, at *16

(S.D.N.Y. Nov. 13, 2006) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69

(2d Cir. 2000)); (Compl. ¶ 14.)

    (3)    **Hostile Work Environment**

        Defendants argue, among other things, that, "even assuming the alleged comments about

hair color are true, such comments are clearly not sufficiently severe or pervasive to rise to the

level of creating a hostile work environment." (Defs. Mem. at 13.)  Plaintiff counters, among

other things, that her supervisors made "racially tinted remarks" about her hair color, "threatened

her with termination, subjected her to intimidation, expelled her from work, and told her that

[she] would be replaced." (Pl. Mem. at 18, 19.)

        "To state a hostile work environment claim [under Section 1981], a plaintiff must allege

that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Doe, 583

F. Supp. 2d at 449 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

"Ultimately, to avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts

sufficient to support the conclusion that she was faced with harassment . . . of such quality or

quantity that a reasonable employee would find the conditions of her employment altered for the

worse[.]" Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations omitted).  The

United States Court of Appeals for the Second Circuit has "repeatedly cautioned against setting

the bar too high in [the motion to dismiss] context." Id. (internal quotations omitted).

Plaintiff alleges a hostile work environment claim.  See Liburd v. Bronx Lebanon Hosp.

Ctr., No. 07 Civ. 11316, 2008 WL 3861352, at *6–7 (S.D.N.Y. Aug. 19, 2008).  Among other

things, Plaintiff alleges that Lautenbacher "publicly embarrassed and humiliated [P]laintiff

because of the blonde highlights in her hair"; remarked that, "I can't have you working like that,

either you can find a way to take the blonde highlights out, or don't come back to work"; and

"told [P]laintiff that she should have the hair color that she was 'born with.'"  (Compl. ¶¶ 32, 33,

50.)  Plaintiff further alleges that she "lost pay for the hours she did not work when she was

ordered to leave the Store and to color her hair."  (Compl. ¶ 42); see Illiano v. Mineola Union

Free Sch. Dist., 585 F. Supp. 2d 341, 350 (E.D.N.Y. 2008) ("[C]ourts examining hostile work

environment claims should consider [among other things] whether [the discriminatory conduct]

is physically threatening or humiliating [and] whether it unreasonably interferes with an

employee's work performance.") (internal quotations omitted).  And, "[t]he severity and

pervasiveness of [Defendants'] conduct is a factual question that is inappropriate to decide on a

motion to dismiss."  Doe, 583 F. Supp. 2d at 450.

**(4)     Retaliation**

Defendants argue, among other things, that Plaintiff "fails to identify a single adverse

employment action that was taken against her."  (Reply at 6.)  Plaintiff counters, among other

things, that "she complained about the unequal application of [A&F's] 'look' policy between the

African-American and White employees to [Lautenbacher], a supervisor, who dismissed and

refused to investigate her complaints and expelled her from work, as a result of which [Plaintiff]

lost pay"; and she "complained of the discriminatory enforcement of the 'look' policy by

[Lautenbacher and Landau] to [Park], a manager, who also ignored and refused to investigate

[P]laintiff's complaints . . . telling [P]laintiff that she would be replaced."  (Pl. Mem. at 16.)

11

"To establish a prima facie case of retaliation under [Section] 1981, Plaintiff must show that [i] [she] engaged in a protected activity, [ii] Defendants were aware of [her] participation in the protected activity, [iii] Defendants took adverse action against [her], and [iv] a causal connection existed between the protected activity and the adverse action." Ogindo, 2008 WL 5105153, at *4; see Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir. 2001).

Plaintiff alleges a claim of retaliation.  See Boyer v. Syosset Cent. Sch. Dist., No. 07 Civ. 3520, 2008 WL 1766603, at *5–6 (E.D.N.Y. Apr. 14, 2008).  First, Plaintiff "allege[s] that [she] made an informal complaint of discrimination on the basis of race related to the ['look'] policy, which is a sufficient allegation of 'protected activity' to survive a motion to dismiss." McKenzie v. Nicholson, No. 08 Civ. 773, 2009 WL 179253, at *4 (E.D.N.Y. Jan. 26, 2009) (emphasis omitted); (see Compl. ¶¶ 34, 52–54.)  Second, Plaintiff alleges she complained to Park, a supervisor or manager, and Lautenbacher, a manager.  (See Compl. ¶¶ 17, 19, 34, 35, 53); Patane, 508 F.3d at 115.  Third, "[i]nasmuch as [Plaintiff] alleges [loss of wages and] constructive discharge an actionable adverse employment action has been sufficiently alleged." Tronetti v. TLC HealthNet Lakeshore Hosp., No. 03 Civ. 375, 2003 WL 22757935, at *4 (W.D.N.Y. Sept. 26, 2003); see Gonzalez v. New York City Transit Auth., No. 06 Civ. 761, 2008 WL 924934, at *10 (E.D.N.Y. Mar. 31, 2008) ("[P]laintiff's allegation that she was wrongfully excluded from work and lost pay as a result, constitutes an adverse employment action."); (Compl. ¶¶ 42, 48, 58, 79, 80).  Fourth, Plaintiff alleges that she lost pay and was terminated and/or constructively discharged after she complained about the 'look' policy to her supervisors.  (See Compl. ¶¶ 34–35, 42, 48, 52–53, 58); McKenzie, 2009 WL 179253, at *5 ("[C]ausation may be shown indirectly . . . by demonstrating that the protected activity was followed closely by a retaliatory action.").

### (5)     Section 1985 Conspiracy

Defendants argue, among other things, that the intracorporate conspiracy doctrine bars Plaintiff's Section 1985 claim because "[a]ll of the discriminatory actions alleged in the Complaint involved employees of [A&F]," and "all of the alleged conspirators [i.e., Lautenbacher, Landau, and Park] were acting within the scope of their employment." (Defs. Mem. at 17, 18.)  Plaintiff counters, among other things, that whether Lautenbacher, Landau, and Park "were acting in furtherance of [A&F's] discriminatory policies or whether their acts and omissions were motivated by personal animus are ultimately issues reserved for the jury[.]"  (Pl. Mem. at 20.)

Under the intracorporate conspiracy doctrine, "the agents and employees of a single corporate entity, . . . acting within the scope of their employment, are legally incapable of conspiring with each other for purposes of Section 1985." Perkins v. Kamco Supply Corp., No. 06 Civ. 5054, 2007 WL 4207193, at *4 (S.D.N.Y. Nov. 27, 2007); see Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976).  Plaintiff's Section 1985 claim fails on its face "because each [D]efendant alleged to have violated Plaintiff's civil rights [i.e., Lautenbacher, Landau, and Park] is employed by [A&F]" and "functioned in a supervisory capacity toward [P]laintiff[.]" Peters v. Molloy Coll. of Rockville Ctr., No. 07 Civ. 2553, 2008 WL 2704920, at *11 (E.D.N.Y. July 8, 2008); (Compl. ¶¶ 17–19; see id. ¶¶ 32–58.)

And, the personal interest exception to the intracorporate conspiracy doctrine does not apply to save Plaintiff's cause of action because "the Complaint merely alleges that [Lautenbacher, Landau, and Park] intentionally conspired to discriminate against Plaintiff and does not allege any additional motivation unrelated to her general allegations of conspiracy based on race." Peters, 2008 WL 2704920, at *11; (see Compl. ¶¶ 67, 80); Jeter v. New York

City Dept. of Educ., 549 F. Supp. 2d 295, 303 (E.D.N.Y. 2008) ("There is an exception . . . to the intracorporate immunity doctrine that allows a Section 1985 action to proceed against members of the same organization if the conspirators were motivated by an independent personal stake in achieving the corporation's objective.") (internal quotations omitted).  Personal racial bias is not the sort of individual interest that takes Lautenbacher, Landau, and Park out of the intracorporate conspiracy doctrine.  See Johnson v. Nyack Hosp., 954 F. Supp. 717, 723 (S.D.N.Y. 1997); see also Salgado v. City of New York, No. 00 Civ. 3667, 2001 WL 290051, at *9 (S.D.N.Y. Mar. 26, 2001).

### (6)     Section 1927 Sanctions

Defendants argue, among other things, that Plaintiff's counsel should be sanctioned under Section 1927 for her "refusal to withdraw" the Section 1985 claim and for "the late addition of [Jeffries] as an individual defendant." (Defs. Mem. at 21, 23–24.)  Plaintiff counters, among other things, that "[D]efendants' demand for fee shifting against [P]laintiff's counsel under [Section 1927] for prosecuting her conspiracy [claim] is at best meritless."  (Pl. Mem. at 22.)

Imposition of sanctions under Section 1927 "is highly unusual and requires a clear showing of bad faith[.]"  West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1092 (2d Cir. 1971)).[5]  Plaintiff's counsel's conduct in bringing the Section 1985 claim and adding Jeffries as an individual defendant was not "so completely without merit as to require the conclusion they must have been undertaken for some improper purpose such as delay."  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999) (internal quotations omitted); see also Sobek v. Quattrochi, No. 03 Civ. 10219, 2006 WL 2381835, at *2 (S.D.N.Y. Aug. 15, 2006); Brown v.

---

[5]     "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

<u>Sara Lee Corp.</u>, No. 98 Civ. 1593, 1998 WL 809518, at *4 (S.D.N.Y. Nov. 19, 1998).

### Abandoned Claims

Defendants argue, among other things, that Plaintiff's constructive discharge claim fails because, although "Plaintiff alleges that she was twice told to change her hair color and one supervisor . . . failed to assist her in making a complaint," a "reasonable person would not have just quit, as Plaintiff did." (Defs. Mem. at 15, (internal quotations omitted).) Defendants also argue that Lautenbacher, Landau, and Park cannot be held individually liable because "neither Lautenbacher's nor Park's actions as alleged have any indicia of discriminatory intent," and Landau has not "been accused of any wrongdoing, discriminatory or otherwise." (Defs. Mem. at 19.) Plaintiff's opposition papers do not appear to respond to Defendants' arguments. (<u>See</u> Pl. Mem. at 1–25.)

Plaintiff's constructive discharge claim and all claims asserted against Lautenbacher, Landau, and Park are deemed abandoned and dismissed "[b]ecause Plaintiff did not address [Defendants'] motion to dismiss with regard to these claims." <u>Martinez v. Sanders</u>, No. 02 Civ. 5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004); <u>see also</u> <u>Hanig v. Yorktown Cent. Sch. Dist.</u>, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); <u>Anti-Monopoly, Inc., v. Hasbro, Inc.</u>, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), <u>aff'd</u>, 130 F.3d 1101 (2d Cir. 1997).

## V.   Conclusion and Order

For the foregoing reasons, Defendants' motion to dismiss [#18] is granted as to Plaintiff's

Section 1985 conspiracy claim, constructive discharge claim, and all claims asserted against

Lautenbacher, Landau, and Park and denied in all other respects.

Plaintiff's cross-motion to conduct limited jurisdictional discovery [#22] is granted.

Dated: New York, New York
       March 30, 2009



_____
**RICHARD M. BERMAN, U.S.D.J.**